WO                                                                                              **JWB**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Earl Felton Crago, Jr., | ) No. CV 06-0443-PHX-EHC (JRI) |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Dora Schriro, et al., | ) |
| Defendants. | ) |

Plaintiff Earl Felton Crago, Jr., an inmate in the custody of the Arizona Department of Corrections (ADC), filed this civil rights action under 42 U.S.C. § 1983 against the following ADC employees: (1) Director Dora Schriro; (2) Warden Trujillo; (3) Deputy Warden Andre; (4) Major Johnson; (5) Correctional Officer (CO) II Teed; (6) Nurse Daley;[1] (7) Criminal Investigation Unit Officer Tartaglia; (8) CO II Fischer; and (9) Facility Health Administrator Sloan (Doc. # 1 at 1-2).[2] Before the Court are the parties' cross-motions for summary judgment (Doc. ## 78, 97). The motions are fully briefed (Doc. ## 98, 107, 113, 117). The Court will deny Plaintiff's summary judgment motion, grant Defendants' summary judgment motion in part, but deny it as to Count I.[3]

---

[1] While Plaintiff identified Nurse Dailey, the correct spelling is Daley (Doc. # 97).

[2] Defendant Transportation Sergeant Doescher was dismissed for failure to serve (Doc. # 44).

[3] The Court also notes that there is a pending motion by Plaintiff to consolidate this action with CV 04-1128-PHX-EHC, which also presents claims related to his assault on

## I.     Background

Plaintiff filed a Complaint alleging that Defendants' failure to protect him from other inmates (Count I) and to provide medical care (Count II) constituted deliberate indifference to his safety and health, which resulted in violations of his Eighth Amendment rights (Doc. #1 at 4-5). Plaintiff further alleged that Defendants retaliated against Plaintiff by filing false disciplinary charges against him and telling him the charges would not be removed until Plaintiff dropped his lawsuits (Count III) (id. at 6).

Plaintiff's claim in Count I stems from an incident on April 20, 2004, when Plaintiff was to be transported from the prison to the Pinal County Jail for an upcoming court appearance. Plaintiff alleged that he informed Teed that the other inmates in the transport vehicle could see that Plaintiff was a protective segregation (PS) inmate and they knew that there was a murder order issued on him by a prison gang (id. at 4A). Plaintiff asserted that he personally told Teed of his PS status and that he had been assaulted on two prior transports by general population (GP) inmates. He stated that despite his pleas not to be put in the transport van, Teed threatened to mace Plaintiff if he did not get into the van. Plaintiff claimed that he did get in the vehicle with a GP inmate who subsequently assaulted Plaintiff (id.). Plaintiff alleged that he was brought back to the prison and received treatment at the ADC hospital for head and body injuries received in that attack (id.). He further claimed that Teed informed Plaintiff that Trujillo and Johnson approved the transport, and were therefore aware of the risk to Plaintiff (id.). Plaintiff claimed that Johnson, Andre, Trujillo, and Schriro were responsible as supervisors who failed to enact policies to protect PS inmates.

Plaintiff's claim in Count II is based on his allegation that Daley filled out a medical log that stated Plaintiff had no injuries following the April 20, 2004 attack, which prevented Plaintiff from receiving follow up treatment at the Pinal County Jail and the ADC (id. at 5). Plaintiff argued Daley's action constituted deliberate indifference because she knew that

---

April 20, 2004. The parties are encouraged to reaffirm their positions on whether consolidation is appropriate in view of this Order.

Plaintiff sustained serious injuries and that his body exhibited the need for further treatment (id. at 5A). Plaintiff further alleged that Sloan, Schriro, and Trujillo are responsible for Daley's action because they supervise her and are responsible for implementing policies to prevent negligence.

Finally, Plaintiff presented two claims of retaliation. First, Plaintiff alleged that Fischer wrote Plaintiff up for assault based on the April 20, 2004 incident (id. at 6). While the assault ticket was dropped, Plaintiff claimed that it was reinstated after he announced his intention to file another lawsuit (id.). Plaintiff further claimed that he was told he would be kept in a Special Management Unit (SMU) facility until he dropped his lawsuits. Second, Plaintiff alleged that another false disciplinary charge was filed against him on September 1, 2004, and when Plaintiff appealed he was told he would not have been found guilty if he had not sued ADC officials (id. at 6A). Plaintiff claimed that as a result of the false disciplinary charges, he is being classified as a maximum custody inmate (id.).

## II.    Summary Judgment

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). On summary judgment, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. If the moving party meets its initial responsibility the burden then shifts to the opposing party who must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed

1 factual dispute be shown to require a jury or judge to resolve the parties' differing versions
2 of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89
3 (1968).

4 When considering a summary judgment motion, the court examines the pleadings,
5 depositions, answers to interrogatories, and admissions on file, together with the affidavits,
6 if any. See Fed. R. Civ. P. 56(c). The evidence presented by the parties must be admissible.
7 Fed. R. Civ. P. 56(e). And the evidence of the non-movant is "to be believed, and all
8 justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

9 Defendants seek summary judgment on the basis that they were not personally
10 involved in any alleged constitutional violation; Teed, Johnson, Andre, Trujillo, and Schriro
11 were not deliberately indifferent to Plaintiff's safety; Daley and Sloan were not deliberately
12 indifferent to Plaintiff's serious medical needs; Defendants are entitled to qualified
13 immunity; and Teed, Fischer, Johnson, Tartaglia, Andre, Trujillo, and Schriro did not
14 retaliate against Plaintiff for filing lawsuits (Doc. # 97).

15 In response, Plaintiff contends that he explicitly informed Teed that he was assaulted
16 twice previously when transported with non-PS inmates and that the inmates in the transport
17 van were aware that Plaintiff was a PS inmate (Doc. # 113 at 2). Plaintiff further argues that
18 the supervisors at his unit failed to enact policies or procedures to ensure the safe transfer
19 of PS inmates and such failure constitutes deliberate indifference (id. at 3). With respect to
20 Count II, Plaintiff contends that Daley prepared a medical transfer summary that stated he
21 had no injuries when he did, which resulted in the failure of the Pinal County Jail to treat
22 Plaintiff. Plaintiff further claims that Daley's supervisor, Sloan, is responsible for failing to
23 rectify Daley's error. Finally, as to Count III, Plaintiff claims that Fischer filed a false
24 disciplinary report against Plaintiff after he threatened to file another § 1983 lawsuit and that
25 ADC personnel told Plaintiff he would be kept in isolation until he dropped his lawsuits (id.
26 at 5).

27 Plaintiff also seeks partial summary judgment as to Count I of his Complaint, arguing
28 that Defendants had knowledge that Plaintiff faced a substantial risk of serious injury when

1 he was transported with the non-PS inmates (Doc. # 78 at 4). Plaintiff claims, as a result, that
2 Defendants' actions constituted deliberate indifference to his safety (id.). In their Response,
3 Defendants reiterate the same arguments that they present in support of their own motion for
4 summary judgment on Count I (Doc. # 97).[4] In reply, Plaintiff contends that Defendants
5 failed to keep him separated from non-PS inmates and therefore he is entitled to summary
6 judgment (Doc. # 107).

**III.     Count I - Failure to Protect**

      **A.     Legal Standard**

States are obligated by the Eighth Amendment to protect prisoners from violence at the hands of other inmates. Farmer v. Brennan, 511 U.S. 825, 833 (1994). To demonstrate that a prison official was deliberately indifference to the threat of serious harm or injury by another prisoner, a plaintiff must show that the "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Id. at 837; Gibson v. County of Washoe, 290 F.3d 1175, 1187-88 (9th Cir. 2002). To prove that officials knew of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. See Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). Deliberate indifference is something more than mere negligence, but "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005) (quoting Farmer, 511 U.S. at 835).

      **B.     Personal Participation**

Defendants' first argument is that they did not personally participate in any alleged constitutional violation against Plaintiff on April 20, 2004 (Doc. # 97 at 3). The crux of their argument is that Plaintiff was "released to the custody of Pinal County" and therefore no

---

[4] Defendants' response to Plaintiff's summary judgment motion was combined with their own summary judgment motion (Doc. # 97).

- 5 -

1 ADC employee could be held responsible for any violation of Plaintiff's constitutional rights
2 (id.). Completely lacking from Defendants' motion, however, is any case law to support
3 their assertion. Plaintiff was and remains an inmate of the Arizona Department of
4 Corrections. The April 20, 2004 incident took place on ADC's premises. Indeed, Teed
5 acknowledges that she was aware of a potential risk to Plaintiff's safety posed by the
6 transport with non-PS inmates (id. at 3-4). In the absence of any legal authority to support
7 their claim, the Court declines to grant summary judgment on the basis that Plaintiff was no
8 longer in the "custody" of the ADC and therefore cannot be held responsible for any alleged
9 constitutional violation.

10 To the extent Defendants contend that Monell v. New York City Dep't of Soc. Servs.,
11 436 U.S. 658, 690-95 (1978) supports their argument, they are mistaken. Monell stands for
12 the proposition that there is no *respondeat superior* liability under 42 U.S.C. § 1983 and does
13 *not* address the present situation where cooperating governmental agencies were responsible
14 for an inmate and his safety. Moreover, Plaintiff aptly notes that ADC issued him a
15 disciplinary ticket for the incident that occurred on April 20, 2004 (Doc. # 113 at 6). It does
16 not follow, therefore, that ADC could discipline Plaintiff for conduct if he was not in their
17 custody or control. Defendants are therefore not entitled to summary judgment on this basis.

### C. Deliberate Indifference

#### 1. *Teed*

20 Defendants next contend that Teed was not deliberately indifferent to Plaintiff's safety
21 (id. at 7). Specifically, Defendants contend that while Teed was responsible for ensuring
22 Plaintiff's safety while in ADC custody, Teed "believed she had no choice but to allow"
23 Plaintiff onto the transport vehicle where she knew Plaintiff would be transported with non-
24 PS inmates (id.). But Teed's own statements create a genuine issue of material fact for trial.
25 She acknowledges that "she expressed her concern to the driver as well as raising the issue
26 with her chain-of-command" when she learned that Plaintiff would be transported with non-
27 PS inmates. The mere statement that Teed was "not sure" whether she had to allow Plaintiff
28 to be transported in this manner does not absolve her of responsibility. Nor does Defendants'

1 argument that Plaintiff was not at a substantial risk of harm because he was not "really hurt" on the two prior occasions he was transported with non-PS inmates. The operative facts here are: (1) Teed knew that Plaintiff was a PS inmate; (2) she knew that Plaintiff was going to be transported with non-PS inmates; (3) Plaintiff informed Teed that he had been assaulted twice previously when transported with non-PS inmates; (4) Teed recognized the risk inherent in such transfer because she expressed her concern to others; (5) Teed let Plaintiff get in the vehicle; (6) where he was subsequently injured. The Court finds that a reasonable jury could find that Teed was deliberately indifferent to Plaintiff's safety and she is therefore not entitled to summary judgment.

### 2. *Johnson, Andre, Trujillo, and Schriro*[5]

Johnson, Andre, Trujillo, and Schriro argue that they were not personally involved in Plaintiff's transfer and cannot be liable on that basis. They also claim that they cannot be liable simply because they supervise someone who was involved. Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff's remaining theory of liability is that these Defendants are responsible for policies ensuring the safety of PS inmates. Contrary to Defendants' assertions, a plaintiff can allege that through its *omissions* an agency can be responsible for a constitutional violation committed by an employee. Gibson, 290 F.3d at 1186. In that instance, however, a plaintiff must show that the agency's deliberate indifference led to the omission that caused the employee to commit the violation. Id.

Here, there is no evidence of any ADC policy concerning the transportation of PS inmates. In their affidavits, the supervisory Defendants maintain that they were not aware that Pinal County was transporting PS inmates with non-PS inmates (Johnson Aff., Doc. # 100, Ex. B ¶ 11; Andre Aff., Doc. # 100, Ex. D ¶ 13; Trujillo Aff., Doc. # 100, Ex. E ¶ 9). The question, therefore, is whether the supervisory Defendants *should* have known whether Pinal County had a practice of transporting PS and non-PS inmates together.

---

[5] Plaintiff also named Doscher in this claim, but he was dismissed for failure to serve (Doc. # 44).

- 7 -

While Defendants assert that there is "no legal mandate that not physically separating PS and non-PS inmates . . . amounts to deliberate indifference" (Doc. # 117 at 4), it is clear that knowing of and disregarding a substantial risk to an inmate's safety can constitute deliberate indifference. Farmer, 511 U.S. at 837. If keeping PS and non-PS inmates separate was unimportant, ADC would not require it at all times. See Director's Instruction (DI) # 125 § 1.1, Doc. # 117, Ex. E. It follows, then, that ADC supervisors *should* have been aware of or inquired about the transportation of PS inmates to cooperating agencies. Defendants do not argue that they are not responsible for implementing policies to ensure the safety of PS inmates; rather, they maintain that "there are no per se rules when it comes to providing for inmate security while . . . being transported" (Doc. # 117 at 6-7).

On this record, the Court finds that there is a genuine issue of material fact for trial as to whether the supervisory Defendants should have known that PS inmates were being transported with non-PS inmates. As a result, the Court finds that the supervisory Defendants are not entitled to summary judgment on this claim.

### D. Qualified Immunity

Teed, Johnson, Andre, Trujillo, and Schriro claim that they are entitled to qualified immunity. If a defendant claims qualified immunity, the court must make two distinct inquires, the "constitutional inquiry" and the "qualified immunity inquiry." See Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049 (9th Cir. 2002). The "constitutional inquiry" asks whether, when taken in the light most favorable to the non-moving party, the facts alleged show that the official's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If so, a court turns to the "qualified immunity inquiry" and asks if the right was clearly established at the relevant time. Id. at 201-02. This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. at 201.

As discussed *supra*, the Court has determined that disputed facts, viewed in the light most favorable to Plaintiff, create a triable issue of fact regarding whether (1) Teed was deliberately indifferent when she allowed Plaintiff to be transported with non-PS inmates,

- 8 -

1 and (2) whether the supervisory Defendants should have enacted policies regarding
2 transportation of PS inmates with cooperating agencies. The second step of the Saucier
3 analysis requires Defendants to demonstrate that the failure to recognize the risk to Plaintiff
4 and putting him in the vehicle did not violate clearly established constitutional law.

5 Defendants argue that the constitutional violation alleged by Plaintiff was not clearly
6 established in April 2004 (Doc. # 97 at 14). A right is clearly established if its contours are
7 "sufficiently clear that a reasonable official would understand that what he is doing violates
8 that right." Kennedy v. City of Ridgefield, 439 F.3d 1055, 1065 (9th Cir. 2006) (quoting
9 Hope v. Pelzer, 536 U.S. 730, 739 (2002)). It is not necessary that there be a prior case with
10 the identical facts showing that a right is clearly established, it is enough that there is
11 preexisting law that provides a defendant "fair warning" that his conduct was unlawful.
12 Kennedy, 439 F.3d at 1065. A state official can be held liable where he affirmatively and
13 with deliberate indifference places an individual in danger he would not otherwise have
14 faced. Id. at 1066. Prison officials have a duty to protect inmates from violence at the hands
15 of other inmates. Farmer, 511 U.S. at 833. Thus, at the time of the incident in April 2004
16 it was clearly established that Plaintiff had a constitutional right not to be placed in a
17 situation where he was at risk of serious harm from another inmate.

18 If Plaintiff's allegations are taken as true, he informed Teed that he was a PS inmate
19 and had been assaulted by GP inmates in the two prior months, and he "begged" Teed not
20 to put him in the vehicle with the GP inmate (Doc. # 1 at 4A). See Farmer, 511 U.S. at 843
21 ("[t]he question under the Eighth Amendment is whether prison officials, acting with
22 deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious
23 damage to his future health,' and it does not matter whether the risk comes from a single
24 source or multiple sources"). If an official claims that he was unaware of the risk to an
25 inmate, he does not escape liability if the evidence shows that he did not verify the
26 underlying facts, or that he declined to confirm inferences of risk that he suspected to exist.
27 Id. at 843 n.8. Teed contends that she did not know whether she could prevent Plaintiff from
28 being transported, despite her knowledge that he would be transported with non-PS inmates.

1 As articulated above, there is a question of fact as to whether Teed acted with deliberate 2 indifference.  As for the supervisory Defendants, there is no evidence that they are not 3 responsible for the implementation of policies and practices regarding the security of PS 4 inmates.  Indeed, the evidence reflects that the wardens are responsible for implementing 5 policies regarding PS inmate safety, but have no policies or procedures in this type of 6 situation.  Moreover, there is evidence that Andre and Johnson were required to review 7 Plaintiff's transport plan, but failed to do so.  The Court therefore finds that Defendants 8 should have been aware that Plaintiff, a PS inmate, faced a substantial risk of harm if he was 9 transported with GP inmates.  As a result, Defendants fail to pass the second prong of the 10 Saucier test, and they are not entitled to qualified immunity.

### E. Plaintiff's Motion for Summary Judgment

While genuine issues of material fact preclude summary judgment in favor of Teed, Johnson, Andre, Trujillo, and Schriro, Plaintiff has not met his burden to demonstrate that any of those five Defendants was deliberately indifferent to Plaintiff's safety as a matter of law.  Indeed, Plaintiff has not conclusively established that there was any action that *could* have been taken by any Defendant after he was placed on the Pinal County transport vehicle.  Consequently, the Court will deny Plaintiff's summary judgment motion.

## IV. Count II - Deliberate Indifference to a Serious Medical Need

### A. Legal Standard

The Eighth Amendment requires that prisoners receive adequate medical care. Estelle v. Gamble, 429 U.S. 97, 104 (1976).  Under § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show "deliberate indifference to serious medical needs." Id.  The test for deliberate indifference consists of two parts in the Ninth Circuit.  McGuckin v. Smith, 974 F.2d 1050 (9th Cir.1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir.1997) (en banc).  A plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations and citations

1  omitted). Second, a plaintiff must establish deliberate indifference to that need. McGuckin,
2  974 F.2d at 1060. A state prison official is deliberately indifferent if he both knows of and
3  disregards an excessive risk to an inmate's health. Farmer, 511 U.S. at 837. This requires
4  a "purposeful act or failure to respond to a prisoner's pain or possible medical need" and
5  "harm caused by the indifference." Jett, 439 F.3d at 1096. Deliberate indifference may be
6  shown when an official denies, delays, or intentionally interferes with treatment or by the
7  way that a medical professional provides the care. Id. A prisoner need not show his harm
8  was substantial; however, such would provide additional support for the inmate's claim that
9  the defendant was deliberately indifferent to his needs. McGuckin, 974 F.2d at 1060. If the
10 harm is an "isolated exception" to the defendant's "overall treatment of the prisoner [it]
11 ordinarily militates against a finding of deliberate indifference." Id. (citations omitted).

12         Negligence or medical malpractice does not establish a sufficiently culpable state of
13 mind. Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980). But a prisoner
14 does not have to prove that he was completely denied medical care in order to demonstrate
15 deliberate indifference. Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000). "[A] mere
16 'difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate
17 indifference.'" Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (citations omitted).
18 To prevail on a claim involving choices between alternative courses of treatment, a prisoner
19 must show that the course of treatment the doctors chose was medically unacceptable in light
20 of the circumstances and that it was chosen in conscious disregard of an excessive risk to
21 plaintiff's health. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

22         **B.    Deliberate Indifference**

23         In his Complaint, Plaintiff alleges that Daley was deliberately indifferent to Plaintiff's
24 serious medical needs when she filled out a medical transfer summary on April 20, 2004, that
25 stated Plaintiff did not have any medical injuries (Doc. # 1 at 5). As a result, Plaintiff
26 contends that he did not receive necessary follow up treatment upon his transfer to the Pinal
27 County Jail. Plaintiff further alleges that Sloan, Trujillo, and Schriro are responsible for
28 Daley's actions as her supervisors (id. at 5A).

1   The parties do not dispute that Plaintiff suffered from a serious medical need, thereby
2   satisfying the first prong of the deliberate indifference test. Estelle, 429 U.S. at 104.

3   To meet their burden on summary judgment, Defendants must come forward with the
4   lack of a triable issue of fact; namely, evidence that they did not act with deliberate
5   indifference to Plaintiff's serious medical need.

6   *1.   Daley*

7   The foundation of Plaintiff's claim against Daley is based upon her preparation of a
8   medical transfer summary for Plaintiff's transfer from the ADC to the Pinal County Jail.
9   Specifically, Plaintiff contends that Daley was deliberately indifferent when she prepared
10  a transfer summary stating that Plaintiff did not have any injures (Doc. # 1 at 5A).

11  In support of her summary judgment motion, Daley submits her affidavit (Doc. # 98,
12  Ex. F). She attests that while she has no independent recollection of preparing Plaintiff's
13  medical transfer summary on April 21, 2004, she customarily reviews medical charts for
14  purposes of preparing transfer summaries (id. ¶ 11). She explained that night nurses prepare
15  medical transfer summaries without treating or examining inmates personally. As a result,
16  she did not see Plaintiff to independently assess his injuries. Daley also attested that it is
17  possible Plaintiff's medical records from April 20, 2004, may not have been filed in his
18  medical chart by the time she prepared his medical transfer summary that evening (id.).

19  On this record, Daley has met her initial burden to present the basis of her motion and
20  identify portions of the record that show an absence of a genuine issue of material fact. The
21  burden now shifts to Plaintiff to present specific facts that a genuine issue exists. Fed. R.
22  Civ. P. 56(e).

23  Plaintiff cannot meet this burden for at least two reasons. First, there is no evidence
24  that Daley's actions were anything more than negligent. It is undisputed that Daley did not
25  examine or treat Plaintiff prior to her preparation of the transfer summary, instead relying on
26  Plaintiff's chart, which may not have been updated by the time she wrote the transfer
27
28

1 summary (Doc. # 98, Ex. F ¶¶ 10-11).[6] And Plaintiff has neither alleged nor demonstrated that Daley prepared the transfer summary with the knowledge that Plaintiff required treatment and *purposefully* chose to indicate he had no injuries. Indeed, there is not one piece of evidence to suggest that Daley had Plaintiff's medical records from the day before and deliberately indicated he had no injuries. Rather, Plaintiff merely concludes that Daley's actions were deliberate (Doc. # 113 at 4). But conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor, 880 F.2d at 1045. There are simply no facts from which to draw the inference that Daley's actions were deliberate.

Second, Plaintiff's own evidence demonstrates that at most his treatment was delayed and not denied.[7] As a result, any delay in providing medical treatment does not constitute deliberate indifference unless the delay was harmful. Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989) (quoting Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam)); see Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002) (the Eighth Amendment is only violated if "delays occurred to a patient with problems so severe that delays would cause significant harm that Defendants should have known this to be the case "); Wood v. Housewright, 900 F.2d 1332, 1333-35 (9th Cir. 1990) (holding that a delay of several days in receiving pain medication for a broken shoulder did not amount to a constitutional violation). After Plaintiff's return from the Pinal County Jail, he saw an ADC physician on May 10, 2004 for x-rays and received a referral for an eye appointment, which he had on May 19 (Doc. # 116, Ex. 2 at 9, Ex. 3 at 6). Thus, there is *no* evidence from

---

[6] Plaintiff also maintains that it is ADC policy to send an inmate's medical chart when he is transferred to another agency (Doc. # 113 at 4). But this fact is not material. As stated, there is no evidence that Daley's actions were anything more than negligent. And the fact that Plaintiff's medical chart was not sent to the Pinal County Jail inferentially supports Daley's claim that Plaintiff's April 20, 2004 records were not yet put into his chart.

[7] To the extent that Plaintiff claims that Daley's actions resulted in not being treated at the Pinal County Jail, this claim fails. Plaintiff himself maintains that his injuries were severe and obvious. Moreover, Plaintiff has not named any employees of the Pinal County Jail for failing to treat him.

- 13 -

which the Court could make a reasonable inference that there was harm caused by any delay. See Jimenez v. Sambrano, 2007 WL 4961207, at *2 (S.D. Cal. 2007). Consequently, for these reasons, Daley will be granted summary judgment on Count II.

### 2. *Sloan, Trujillo, and Schriro*

In his Complaint, Plaintiff contends that Sloan is responsible for Daley's actions because he is her supervisor and Schriro and Trujillo are responsible for failing to enact policies to protect inmates' health (Doc. # 1 at 5A). In his Response, Plaintiff argues that Sloan was authorized to instruct Daley to see Plaintiff in order to prepare his transfer summary (Doc. # 113 at 4). Plaintiff further contends that Sloan was made aware that Daley had prepared a false transfer summary and failed to transfer Plaintiff's entire medical file and failed to take any action.

Plaintiff's claim against Sloan, Schriro, and Trujillo fails because there is no evidence that the ADC's policy of using medical records to create transfer summaries creates a substantial risk of harm to inmates. As stated, Plaintiff has not met his burden to come forward with admissible evidence that supports his claim that Daley's actions were anything more than negligent. Because the Court has already determined that Daley was not deliberately indifferent to Plaintiff, that finding vitiates the possibility that her supervisors were deliberately indifferent for failing to properly supervise her. Consequently, Sloan, Trujillo, and Schriro are entitled to summary judgment on this claim.

## V. Count III - Retaliation

In Count III, Plaintiff alleged that Schriro, Trujillo, Andre, Johnson, Teed, Tartaglia, and Fischer violated Plaintiff's constitutional rights by retaliating against him for filing §1983 lawsuits.[8]

### A. Legal Standard

A viable claim of First Amendment retaliation contains five elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that inmate's

---

[8] Plaintiff also named Doscher in this claim, but he was dismissed for failure to serve (Doc. # 44).

1  protected conduct and that such action (4) chilled the inmate's exercise of his First
2  Amendment rights (or that the inmate suffered more than minimal harm) and (5) the action
3  did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d
4  559, 567-68 (9th Cir. 2005); see also Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997)
5  (retaliation claims require an inmate to show that (1) the prison official acted in retaliation
6  for the exercise of a constitutionally-protected right and (2) the action "advanced no
7  legitimate penological interest").  Retaliation claims must be evaluated in light of the
8  concerns of excessive judicial involvement in day-to-day prison management, and courts
9  must therefore "afford appropriate deference and flexibility" to prison officials in the
10 evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory.
11 Pratt v. Rowland, 65 F3d 802, 807 (9th Cir. 1995).  Prisoners have a constitutionally-
12 protected right to file grievances and to pursue civil rights litigation without retaliation.
13 Rhodes, 408 F.3d at 567.

**B.     Fischer**

15 Plaintiff alleges that Fischer wrote Plaintiff up for assault with a weapon after the
16 April 20, 2004 incident in retaliation for Plaintiff's threat to file another § 1983 lawsuit (Doc.
17 # 1 at 6).  Fischer moves for summary judgment on the basis that she had no knowledge of
18 Plaintiff's intent to file a § 1983 lawsuit and, therefore, could not have retaliated against him
19 (Doc. # 97 at 16).  In support of her motion, Fisher submits her affidavit (Doc. # 100, Ex. C).
20 Fischer attests that on April 20, 2004, she observed Plaintiff and another inmate fighting in
21 the back of a transport vehicle, and they continued to fight even after they fell out of the
22 vehicle (id. ¶¶ 8-9).  As a result, based on her observations, Fischer attests that she placed
23 Plaintiff on disciplinary report for assault (id. ¶ 13).  Fischer further attests that she had no
24 knowledge of (1) Plaintiff's PS status because she was not assigned to his unit, (2) Plaintiff's
25 litigation history, or (3) Plaintiff's intent to file a § 1983 lawsuit (id. ¶¶ 14-17).  Finally,
26 Fischer maintains that she wrote the disciplinary report because of her observation of the
27 April 20, 2004 incident, where Plaintiff was fighting with another inmate (id. ¶ 13).
28 On this record, Fischer has met her initial burden to present the basis of her motion

1   and identify portions of the record that show an absence of a genuine issue of material fact.
2   The burden now shifts to Plaintiff to present specific facts that a genuine issue exists. Fed.
3   R. Civ. P. 56(e). Plaintiff has not met this burden for two reasons. First, Plaintiff alleged
4   that he told Tartaglia that he intended to file a § 1983 lawsuit as a result of the April 20, 2004
5   incident (Doc. # 113 at 5). Plaintiff has *never* alleged that he told Fischer he intended to file
6   a § 1983 action or that Tartaglia ever had occasion to tell Fischer of Plaintiff's intentions.[9]
7   Second, Plaintiff's claim is unsupported by the record. Fischer wrote her disciplinary report
8   on April 20, 2004 at 1:30 p.m., contrary to Plaintiff's allegation that she wrote her report on
9   April 21, and thereby undermining his claim that she wrote her report *after* he threatened to
10  file a lawsuit. Plaintiff has simply concluded that Fischer's actions were retaliatory. But this
11  conclusion is not supported by any facts that give rise to an inference that she took an
12  adverse action against Plaintiff *because of* protected conduct. As a result, this conclusory
13  allegation is insufficient to defeat summary judgment. Taylor, 880 F.2d at 1045. Fischer is
14  entitled to summary judgment.

15  **C.     Tartaglia**

16  Plaintiff alleges that Tartaglia interfered with a disciplinary proceeding stemming
17  from a September 1, 2004 incident where Plaintiff claims he was attacked by an inmate with
18  a razor blade (Doc. # 113 at 5). Specifically, Plaintiff claims that although other ADC
19  personnel verified that a weapon was used against Plaintiff, Tartaglia stated a weapon was
20  not used, which resulted in Plaintiff being found guilty of fighting (id.).

21  Tartaglia moves for summary judgment on the basis that he did not prepare any
22  disciplinary reports relating to the September 1, 2004 fight (Doc. # 97 at 17). In support of
23  his motion, Tartaglia submits his affidavit (Doc. # 100, Ex. H). Tartaglia attests that the
24  extent of his involvement in the September 1, 2004 incident was assessing the scene of the
25  altercation and taking pictures of the inmates' injuries (id. ¶ 8). Tartaglia further attests that

---

[9] There is also no evidence that Tartaglia had *any* involvement in Plaintiff's disciplinary proceedings related to the April 20, 2004 incident, and Plaintiff does not allege any involvement.

- 16 -

1  he did not observe the fight and did not appear in person at Plaintiff's disciplinary hearing
2  (id. ¶¶ 9, 11). Tartaglia asserts that the Disciplinary Coordinator asked him whether a
3  weapon had been used in the fight, and Tartaglia replied that "to the best of his knowledge"
4  a weapon had not been used (id. ¶ 20; Doc. # 100, Ex. H, Attach. 2). But Tartaglia maintains
5  that he was not involved in Plaintiff's disciplinary proceedings related to this incident and
6  did not submit a report (Doc. # 100, Ex. H ¶ 12). Finally, Tartaglia attests that he had no
7  knowledge of Plaintiff's litigation history (id. ¶ 14).

8  On this record, Tartaglia has met his initial burden to present the basis of his motion
9  and identify portions of the record that show an absence of a genuine issue of material fact.
10 The burden now shifts to Plaintiff to present specific facts that a genuine issue exists. Fed.
11 R. Civ. P. 56(e). Plaintiff has not met this burden. In his response to Defendants' summary
12 judgment motion, Plaintiff alleges that "Tartaglia . . . suppressed the IMS records during
13 disciplinary proceedings and stated there were no records of [a] weapon being used, which
14 resulted in Plaintiff being found guilty" (Doc. # 114 at 5). But Plaintiff's claim is
15 unsupported by and is, in fact, contradicted by the record. Plaintiff has not introduced any
16 evidence that Tartaglia was present at or involved with his disciplinary proceeding.
17 Moreover, Plaintiff has not contradicted Tartaglia's evidence that he merely told the
18 disciplinary coordinator that "to the best of his knowledge" no weapon was used against
19 Plaintiff (Doc. # 100, Ex. H, Attach. 2). As a result, there is no evidence from which the
20 Court could conclude that Tartaglia's single statement that "to the best of his knowledge" no
21 weapon was used against Plaintiff was an adverse action taken against Plaintiff based on his
22 protected conduct. Rhodes, 408 F.3d at 567-68. Tartaglia is entitled to summary judgment.

23 **D.    Andre**

24 Plaintiff also alleges that Andre "suppressed the IMS reports" during his disciplinary
25 proceedings that showed officers verified Plaintiff was attacked with a weapon (Doc. # 113
26 at 5). Plaintiff claims as a result that he was found guilty of fighting and the charge was
27 upheld on appeal.

28 In support of her argument that she did not retaliate against Plaintiff, Andre presents

1 her affidavit (Doc. # 100, Ex. D). Andre attests that when reviewing Plaintiff's appeal of
2 Plaintiff's disciplinary charge, she determined that it was not conclusively established that
3 a weapon was used and that Plaintiff pleaded guilty (id. ¶ 22). As a result, she upheld the
4 findings (id.). She further attested that she had no involvement in Plaintiffs's classification
5 or placement because his transfer to SMU I occurred after her retirement (id. ¶ 23).

6 Plaintiff has similarly not met his burden to create a genuine issue of material fact that
7 Andre took any action in retaliation for Plaintiff's protected conduct. In Andre's written
8 decision upholding Plaintiff's guilty finding, she acknowledges that one staff member
9 thought a weapon had been used, but noted that no weapon had been found (Doc. # 100, Ex.
10 D, Attach. 8). That fact, in conjunction with the facts that no staff member reported seeing
11 any weapon, no photographs of any weapon were viewed, and medical staff did not report
12 injuries consistent with any weapon, led Andre to conclude that the presence of a weapon had
13 not been conclusively established (id.). Finally, Andre noted that Plaintiff pleaded guilty to
14 fighting. As a result, she upheld the charge.

15 The Court finds that no reasonable jury could conclude that Andre's actions were
16 retaliatory. Plaintiff simply maintains that a weapon was used against him and, therefore,
17 any action against him was retaliatory. But that conclusory allegation is simply unsupported
18 and insufficient to defeat summary judgment. Andre acknowledged that one staff member
19 thought a weapon was used, but also considered all the other evidence suggesting that a
20 weapon had not been used. That she determined the presence of a weapon had not been
21 conclusively established does not equate to retaliatory conduct because of Plaintiff's
22 protected action, especially because Plaintiff pleaded guilty to the charge of fighting (id.).
23 There is simply no evidence from which a jury could infer that Andre's actions were
24 retaliatory. She is entitled to summary judgment on this claim.

25 //
26 //
27
28

### E.    Schriro, Trujillo, Teed, and Johnson[10]

In his Complaint, Plaintiff states that Schriro, Trujillo, Johnson, and Teed "violated Plaintiff's First Amendment rights by retaliating against him for filing" § 1983 actions (Doc. # 1 at 6A). But Plaintiff does not allege any specific action by any of these four Defendants. In his response to their summary judgment motion, Plaintiff does not articulate any specific action that any of these four officials took that was retaliatory.

To state a valid claim under § 1983, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. See Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976). Here, there is no allegation of *any* alleged action by these four Defendants. And there is no evidence that these four individuals were involved with any of Plaintiff's disciplinary proceedings. As a result, there is absolutely no evidence from which a jury could conclude that any action they took was retaliatory. Consequently, Schriro, Trujillo, Johnson, and Teed are entitled to summary judgment on this claim.

## VI.    Conclusion

The Court finds that a genuine issue of material fact does not exist for Counts II or III—deliberate indifference to serious medical needs and retaliation—and Defendants' summary judgment motion for those counts will be granted. Because the Court finds, however, that material issues of fact exist regarding Count I—failure to protect—against Teed, Johnson, Andre, Trujillo, and Schriro, the Court will deny both Defendants' and Plaintiff's summary judgment motions as to that claim.

---

[10] In his response to Defendants' summary judgment motion, Plaintiff makes allegations against CO III Daughtry and other unnamed ADC personnel (Doc. # 1 at 6-6A; Doc. # 113 at 5-6). Plaintiff claims that "ADC personnel" told him that he would be kept in an SMU facility until he dropped his § 1983 lawsuits. Plaintiff also claims that CO III Daughtry told Plaintiff he would not have been found guilty of his disciplinary violations if he had not sued ADC officials (Doc. # 113 at 5-6). But these allegations do not create a genuine issue of material fact for two reasons. First, none of these individuals are named as Defendants. Moreover, there is no allegation or evidence that these individuals acted at the behest of or in concert with the named Defendants.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion for Summary Judgment (Doc. # 97). All other matters in this action remain with the Magistrate Judge for disposition as appropriate.

(2) Defendants' Motion for Summary Judgment (Doc. # 97) is **granted** in part and **denied** in part. The motion is granted as to Counts II and III. The motion is otherwise **denied**.

(3) Plaintiff's Motion for Summary Judgment (Doc. # 78) is **denied**.

(4) The remaining claim is Count I against Teed, Johnson, Andre, Trujillo and Schriro.

DATED this 24th day of September, 2008.

*Earl H. Carroll*
Earl H. Carroll
United States District Judge